UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

FEDERAL DEPOSIT INSURANCE CORPORATION
AS CONSERVATOR FOR INDYMAC FEDERAL
BANK, F.S.B.[1],

                              Plaintiff,                  **Hon. Hugh B. Scott**

                                                           08CV476A

                                v.                      **Report**
                                                            **&**
                                                         **Recommendation**

BARTH SULLIVAN BEHR, LLP, a New York Limited Liability
Partnership;
LAURENCE D. BEHR, an individual;
PHILIP C. BARTH, III, an individual;
ANITA PERRY, an individual;
TAIWAN INDUSTRIES, a Taiwan company;
and XU YU, an individual,

                              Defendants.

Before the Court are plaintiff's motions to dismiss the counterclaim by defendants Barth Sullivan Behr, LLP, Laurence Behr and Philip Barth (collectively the "law firm defendants") (Docket Nos. 20[2], 35[3]). Responses to the initial motion were due by October 7, 2008, and reply

---

[1] Pursuant to new caption previously ordered by this Court, Docket No. 38, in granting plaintiff's motion for substitution of party, Docket No. 24.

[2] In support of this motion, plaintiff submitted its brief, Docket No. 21, and attorney's affidavit with exhibits (the pleadings in this action), Docket No. 22, and plaintiff's reply, Docket No. 34.
    In opposition, the law firm defendants submitted their Amended Answer with Counterclaim and Cross-Claims, Docket No. 27; and their memorandum of law, Docket No. 28.

[3] In support of this motion, plaintiff submitted its attorney's affidavit with exhibits, Docket No. 35, and its memorandum of law, Docket No. 36.

(if any) was due by October 14, 2008, with this motion deemed submitted (without oral argument) on October 14, 2008 (Docket No. 23).  Meanwhile, defendants filed their Amended Answer (Docket No. 27), which plaintiff now addresses in its second motion (Docket No. 35).

Then-plaintiff IndyMac Bank, F.S.B., also moved to substitute the Federal Deposit Insurance Corporation ("FDIC") as Conservator for IndyMac Federal Bank, F.S.B. (Docket No. 24), which was granted in a separate Order (Docket No. 38).  For convenience, the term "plaintiff" herein will refer to either the former IndyMac Bank, F.S.B., and its successor the FDIC (unless context requires otherwise where the entity will be specified).

BACKGROUND

This diversity action alleging fraud arises from a common e-mail scam.  On December 4, 2007, defendant Xu Yu, on behalf of defendant Taiwan Industries, sent an e-mail that solicited defendants Laurence Behr and his firm Barth Sullivan Behr, LLP, to collect a debt from defendant Anita Perry allegedly owed to Taiwan Industries, with Behr and his firm retaining a percentage of the amount collected as its legal fees (Docket No. 1, Compl. ¶ 18).  Yu claimed that Taiwan Industries was owed by "Anita Perry, Apparels Distributors" $277,750 plus late charges (id. ¶¶ 18, 22).  After some investigation[4], Behr and the firm agreed to represent this client (id. ¶¶ 19-26).

On December 11, 2007, Behr received a check for $245,000 purportedly from the debtor and Behr the next day deposited the fund into the firm's trust account and paid the balance (less the firm's fee) to Taiwan Industries on December 14, 2007 (id. ¶¶ 28-30).  According to the law

---

[4]Plaintiff alleges that Behr later noted that this offer "sounded too good to be true," Docket No. 1, Compl. ¶ 31.

firm defendants, the check cleared on December 14, 2007 (see Docket No. 28, Defs. Memo. at 3).

Plaintiff IndyMac Bank, F.S.B., had issued a home equity line of credit to two of its customers (Docket No. 1, Compl. ¶¶ 15-17). The check deposited by Behr and his firm and proceeds paid out to Taiwan Industries was from that home equity line of credit account issued by plaintiff and not from an Anita Perry. Plaintiff alleges that the home equity line of credit check was fabricated by someone other than plaintiff's borrowers. (Id. ¶¶ 33-34.) On or about January 14, 2008, when it discovered the fraudulent nature of the check, plaintiff returned the check as dishonored to the depositing bank, M&T Bank and notified the law firm defendant that defendants acted wrongfully in a fraudulent check scam. The firm refused to repay the funds to plaintiff. (Id. ¶¶ 32, 33, 35.)

Plaintiff alleges in its Complaint breach of Uniform Commercial Code (or "UCC") presentment warranties, under UCC §§ 4-207, 3-417(1), fraud and fraudulent misrepresentation against the law firm defendants and defendants Perry, Taiwan Industries, and Yu (these defendants collectively the "scheme defendants") (id. ¶¶ 37-43, 44-53, 9). Plaintiff also alleges aiding and abetting and negligence by the law firm defendants, and unjust enrichment and conversion against all defendants (id. ¶¶ 54-57, 62-73, 58-61, 74-77).

The law firm defendants filed their Answer with cross-claims and a counterclaim (Docket No. 7; see also Docket No. 27, Am. Ans.). Pertinent to plaintiff's present motion, these defendants allege prima facie tort against plaintiff by dishonoring the disputed check causing the firm's client account to be in arrears for $147,000 for about four months (Docket No. 7, Ans.

¶¶ 65-73; see also Docket No. 27, Am. Ans. ¶¶ 65-74).  To date, the scheme defendants have yet to appear in this action.

This case was referred to the undersigned on August 10, 2008 (Docket No. 10), and a scheduling conference was set for October 28, 2008, for this case (Docket No. 11).

*Plaintiff's Motion to Dismiss the Counterclaim*

Plaintiff next moved to dismiss the counterclaim, arguing that the counterclaim fails to state a claim (Docket Nos. 20, 22, Pl. Brief at 3-10).  First, plaintiff contends that the law firm defendants lack standing to challenge the wrongful dishonor of the check since these defendants were not "customers" under the UCC (Docket No. 22, Pl. Br. at 3-4), and, second, that there was no wrongful dishonor of that check (id. at 5-6).  Further, plaintiff states that the law firm defendants cannot show the elements of a prima facie tort, in particular they cannot show disinterested malevolence and they failed to allege special damages (id. at 6-9).  Plaintiff concludes that, even if the counterclaim was plausible, these defendants are not entitled to any form of damages (id. at 9-10).

These defendants filed their Amended Answer[5] while this motion to dismiss the counterclaim was pending.  They modify[6] and amplify their allegations regarding their demands that plaintiff withdraw the dishonor of the check at issue (id. ¶¶ 69-74).  They now allege that plaintiff dishonored the check in January 14, 2008, long after the expiration of time for a lawful

---

[5]Which plaintiff termed to be "trivially altered pleading," Docket No. 34, Pl. Reply at 1 n.1.

[6]For example, they apparently drop the contention that plaintiff's counsel threatened them with commencing a "baseless" RICO action in federal court in California, cf. Docket No. 7, Ans. ¶ 68.

4

dishonor, causing the firm to suffer an arrears in its trust account of $147,000 for approximately four months (id. ¶ 68). They allege that plaintiff failed to withdraw the dishonor or to offer any justification up to May 10, 2008, when the time for offering such a justification expired (id. ¶ 71), noting that between January 14 and May 10, 2008, plaintiff never made a demand for return of any funds (id. ¶ 72). The law firm defendants claim special damages of $400 incurred in borrowing while this arrearage existed in its trust account and the costs of being compelled to respond to an investigation by the New York State Attorney Grievance Committee (id. ¶ 73; cf. Docket No. 7, Ans. ¶ 72 (general discussion of damages arising from dishonor)). "By reason of the intentional and willful nature of plaintiff's conduct, evincing a high degree of moral turpitude and demonstrating such wanton dishonesty as to imply a criminal indifference to civil obligations," these defendants conclude that plaintiff should be liable for punitive damages (Docket No. 27, Am. Ans. ¶ 74; cf. Docket No. 7, Ans. ¶ 73). They contend that the Amended Answer alleges a cause of action for prima facie tort (Docket No. 28, Defs. Memo. at 6-10), in particular, that they allege suffering special damages (id. at 7) and that plaintiff's actions were solely motivated by an intent to harm defendants (id. at 7). They contend that the "plausibility" of these assertions are questions of fact and not suitable for decision on a motion to dismiss (id. at 8), but without discussing motion to dismiss case law following Bell Atlantic Corp. v. Twombly, 550 U.S. ___, 127 S.Ct. 1955 (2007), discussed below in the standards analysis.

    Plaintiff replies that the amended counterclaim still fails to allege a plausible cause of action (Docket No. 34, Pl. Reply Memo. at 3, 6-8). Plaintiff denies that these defendants are entitled to punitive damages under this counterclaim (id. at 8-9) and the FDIC as conservator of new IndyMac is not liable for the counterclaim since it is not one of the type of claims assumed

by the FDIC, the liability remains with old IndyMac (id. at 9-10). Plaintiff concludes that the original counterclaim, as well as the amended version, should be dismissed (id. at 10).

*Plaintiff's Second Motion to Dismiss*

After defendants filed the Amended Answer, plaintiff moved to dismiss the counterclaim stated therein (Docket No. 35; see Docket No. 34, Pl. Memo. at 10; Docket No. 36, Pl. Memo. at 10). Plaintiff again asserts these defendants did not materially change their claims (Docket No. 36, Pl. Memo. at 2, 3). Plaintiff argues that the Amended Answer rests on bald assertions and legal conclusions and fails to allege the elements for prima facie tort (id. at 3). Plaintiff reads defendants' prima facie tort claim as a UCC wrongful dishonor claim (which these defendants lack standing to assert) and concludes that the prima facie tort cannot be used as a "'catch-all' alternative for every cause of action which cannot stand on its legs," Gertler v. Goodgold, 107 A.D.2d 481, 490, 487 N.Y.S.2d 565, 572 (1st Dep't), aff'd, 66 N.Y.2d 946, 498 N.Y.S.2d 779 (1985) (on opinion of Appellate Division) (id. at 4). Plaintiff again faults the amended counterclaim for not showing factual allegations of plaintiff acting with "disinterested malevolence" (id. at 4-5). To plaintiff, the new allegation that plaintiff knew or should have known the effect of the dishonor on defendants' account (Docket No. 27, Am. Ans. ¶ 67) does not show plaintiff's sole (emphasis in original) motive was to injure them (Docket No. 36, Pl. Memo. at 6).

DISCUSSION

I.   Motion to Dismiss Counterclaim–Standard

Plaintiff has moved to dismiss the counterclaim on the grounds that it states a claim for which relief cannot be granted. Like dismissal of a main claim, a counterclaim under

6

Rule 12(b)(6) of the Federal Rules of Civil Procedure cannot be dismissed unless it appears "beyond doubt that the [party] can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. ___, 127 S.Ct. 1955 (2007), a pleading must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face," id. at 1974 (rejecting longstanding precedent of Conley, supra, 355 U.S. at 45-46); Hicks v. Association of Am. Med. Colleges, No. 07-00123, 2007 U.S. Dist. LEXIS 39163, at *4 (D.D.C. May 31, 2007), similarly applies to a counterclaim asserted in an Answer, see, e.g., Commerce & Indus. Ins. Co. v. U.S. Bank N.A., No. 07 Civ. 5731, 2008 U.S. Dist. LEXIS 67768, at *2-3 (S.D.N.Y. Sept. 3, 2008); Katz v. Image Innovations Holdings, Inc., No. 06 Civ. 3707, 2008 U.S. Dist. LEXIS 22979, at *6, (S.D.N.Y. Mar. 24, 2008).  To survive a motion to dismiss, the factual allegations in the counterclaim "must be enough to raise a right to relief above the speculative level," see Bell Atlantic, supra, 127 S.Ct. at 1965; Reddington v. Staten I. Univ. Hosp., 511 F.3d 126, 132 (2d Cir. 2007); Hicks, supra, 2007 U.S. Dist. LEXIS 39163, at *5.

  A Rule 12(b)(6) motion is addressed to the face of the pleading.  The pleading is deemed to include any document attached to it as an exhibit, Fed. R. Civ. P. 10(c), or any document incorporated in it by reference.  Goldman v. Belden, 754 F.2d 1059 (2d Cir. 1985).  In considering such a motion, the Court must accept as true all of the well pleaded facts alleged.  Bloor v. Carro, Spanbock, Londin, Rodman & Fass, 754 F.2d 57 (2d Cir. 1985).  However, conclusory allegations that merely state the general legal conclusions necessary to prevail on the merits and are unsupported by factual averments will not be accepted as true.  New York State

Teamsters Council Health and Hosp. Fund v. Centrus Pharmacy Solutions, 235 F. Supp. 2d 123 (N.D.N.Y. 2002).

II.     Amendment of Answer and Counterclaim

The law firm defendants contend that they are entitled to amend their Answer under Federal Rule of Civil Procedure 15 as a matter of course without leave of the Court prior to the service of a responsive pleading (Docket No. 28, Defs. Memo. at 2 n.1).  They filed their original Answer with counterclaim and cross-claims on August 7, 2008 (Docket No. 7).  Plaintiff moved for an extension of time to answer the counterclaim (Docket No. 12), which was granted, giving plaintiff until September 17, 2008, to answer the counterclaim (Docket No. 15).  Instead of filing an answer to the counterclaim, plaintiff filed the present timely motion to dismiss it (Docket No. 20) under Rule 12(b)(6).  That motion postponed the deadline for filing a responsive pleading until after its disposition, see Fed. R. Civ. P. 12(a)(4).

Under Rule 15(a) a party may amend a pleading once as a matter of course "before being served with a responsive pleading," Fed. R. Civ. P. 15(a)(1)(A).  Here, plaintiff has not served its responsive pleading, has not objected to the filing of the Amended Answer, and, therefore, the law firm defendants **can amend** their counterclaim without further leave of the Court.

Instead, plaintiff moves to dismiss the counterclaim asserted in the Amended Answer (Docket No. 35).  Given the substitution of the amended pleading for the original, Levitch v. Columbia Broadcasting Sys., 94 F.R.D. 292, 294 (S.D.N.Y. 1982) (prior pleading deemed withdrawn upon filing of amended pleading), aff'd, 697 F.2d 495 (2d Cir. 1983), plaintiff's motion to dismiss the original counterclaim (Docket No. 20) should be deemed **moot** by the

amended pleading, and the Court next addresses plaintiff's motion to dismiss the amended counterclaim (Docket No. 35[7]).

III.   Application

    A.   Standing under the Uniform Commercial Code

Under the UCC § 4-402, "a payor bank is liable to its customer for damages proximately caused by the wrongful dishonor of an item," with "customer" defined in that code as a "person having an account with a bank or for whom a bank has agreed to collect items," id. § 4-104(e). Plaintiff argues that the UCC "unambiguously makes a payor bank liable for wrongful dishonor only to its customer" and that the UCC bars the law firm defendants' common law claims, hence the law firm defendants lack standing to assert claims against plaintiff (Docket No. 21, Pl. Brief at 4, emphasis in original). In its reply, plaintiff further argues that defendants' counterclaim attempts to circumvent the UCC by couching a claim (under the UCC) that they lack standing for as a prima facie tort claim (Docket No. 34, Pl. Reply Memo. at 4).

Defendants respond that these arguments go to their defenses rather than the viability of their counterclaim (Docket No. 28, Defs. Memo. at 6).

As noted by plaintiff (Docket No. 34, Pl. Reply Memo. at 4; cf. Docket No. 28, Defs. Memo. at 5-6), the law firm defendants concede that they lack standing to raise a claim under the UCC. But these defendants raise a claim under prima facie tort. Plaintiff contends that defendants cannot use prima facie tort as a catch-all for claims they otherwise could not assert, Gertler, supra, 107 A.D.2d at 490, 487 N.Y.S.2d at 572 (Docket No. 36, Pl. Memo. at 4), and

---

[7]Plaintiff incorporated arguments made in its first motion to support its second motion to dismiss, Docket No. 36, Pl. Memo. at 3.

defendants can not challenge the dishonor under the UCC. As in Gertler, defendants here allege similar substantive acts (the timing of the dishonor and the presentation of justification for that dishonor) that would be challenged under the UCC by a bank customer with standing to challenge the dishonor. The only additional allegations by these defendants is the impact of plaintiff's apparent delay had upon their trust account and the unwillingness of plaintiff to lift the dishonor or to compromise the matter and terminate the dishonor. On this basis, plaintiff's motion to dismiss the counterclaim should be **granted**. For completeness the Court next turns to the merits of this cause of action.

    B.    Prima Facie Tort

        1.    Choice of Law

In this diversity action, this Court initially must apply the substantive law of our forum state (New York), see Erie R.R. v. Tompkins, 304 U.S. 64 (1938), including its choice of law regime, Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). Pertinent to the present motion, the parties alleged in this action are a former California federal savings bank (see generally Docket No. 24), a New York law firm, and two of its partners (both New York State residents) (see Docket No. 1, Compl. ¶¶ 1-4). The deposit and later dishonor of plaintiff's purported check occurred in a bank in New York (see id. ¶¶ 29-30, 32). Further, venue was alleged to be proper in this District because a substantial part of the events or omissions occurred here (id. ¶ 14). All parties here cite to New York law as being applicable (see Docket No. 21, Pl. Memo. at 6; Docket No. 28, Defs. Memo. at 7). The choice of law clearly would be New York law.

        2.       New York Prima Facie Tort and Defendants' Claim

Under New York law, a prima facie tort requires intentional infliction of harm, resulting in special damages, without excuse or justification and with disinterested malevolence, by an act or series of acts that would otherwise be lawful, Hughes v. Patrolmen's Benevolent Ass'n, 850 F.2d 876, 882 (2d Cir. 1998); Bear, Stearns Funding, Inc. v. Interface Group–Nev., Inc., 361 F. Supp. 2d 283, 306 (S.D.N.Y. 2005) (Docket No. 21, Pl. Br. at 6, 7; Docket No. 34, Pl. Reply Memo. at 6; cf. Docket No. 28, Def. Memo. at 6).

Plaintiff contends, alternatively, that the law firm defendants cannot show the elements of a prima facie tort, because their allegations are not plausible under the Bell Atlantic standard (Docket No. 34, Pl. Reply at 6). The central element to plaintiff is the "disinterested malevolence," Bear, Stearns, supra, 361 F. Supp. 2d at 306, and "any other motive besides a pure desire to injure the plaintiff will destroy a claim for prima facie tort" (id., emphasis omitted), see Durham Industries, Inc. v. North River Ins. Co., 673 F.2d 37, 40 (2d Cir. 1982). Plaintiff concludes that the counterclaim is not plausible because it did not act with disinterested malevolence and these defendants have not shown any facts to back up their assertions, Reddington, supra, 511 F.3d at 132 (id. at 7). Although plaintiff argues that its sole motive was to recover its damages from the forged check (id.), the basis to test the validity of a pleading under Rule 12 is to look at the four corners of the pleadings rather than the defenses raised to those pleadings by the opponent.

These defendants asserted in the original Answer that plaintiff's motives were in part motivated by the desire to recover these damages from defendants (Docket No. 7, Ans. ¶ 67; see Docket No. 34, Pl. Reply at 7). This motive of self-preservation, aside from sheer malevolence,

would defeat a claim of prima facie tort, see Squire Records, Inc. v. Vanguard Recording Soc'y, Inc., 25 A.D.2d 190, 191, 250 N.Y.S.2d 251, 253-54 (1st Dep't 1966) (per curiam) (id.). But that pleading was superceded by the Amended Answer (Docket No. 27), see Levitch, supra, 94 F.R.D. at 294, and plaintiff concedes that this allegation was amended and replaced with an assertion "meant to satisfy the pleading requirements of the [prima facie tort] claim" (Docket No. 34, Pl. Reply Memo. at 8; see Docket No. 36, Pl. Memo. at 3). But plaintiff calls this amendment a mere "bald assertion" without the factual support to survive a motion to dismiss under the Bell Atlantic standard (Docket No. 34, Pl. Reply Memo. at 8; Docket No. 36, Pl. Memo. at 3).

At the core here is the sufficiency of pleading the intent of the opposing party. The assertion of the counterclaim in the Amended Answer **does not** state a claim plausibly on its face and **does not** raise a right to relief above the speculative level. The law firm defendants merely allege that plaintiff took its time in first dishonoring the check and then in giving any justification for the dishonor, meanwhile knowing that defendants would deposit that check into its trust or escrow account (see Docket No. 27, Am. Compl. ¶¶ 66-72). It is implausible that plaintiff's sole motive was to harm defendants merely because plaintiff dishonored late and refused to accept the percentage of the amount lost in return for releasing these defendants and lifting the dishonor (cf. Docket No. 36, Pl. Memo. at 5-6). This assertion does not state a plausible claim for prima facie tort for the counterclaim does not exclude other motives for plaintiff, such as that plaintiff merely sought to recoup its entire losses on the forged check without any regard to the effect the collection process may have on defendants.


CONCLUSION

For the reasons stated above, it is recommended that plaintiff's initial motion to dismiss (Docket No. 20) the counterclaim (as alleged in the Answer, Docket No. 7) of the law firm defendants in this action be **deemed moot** because of the amended pleading and that plaintiff's second motion to dismiss (Docket No. 35) the amended counterclaim asserted in the Amended Answer of these defendants (Docket No. 27) be **granted and the amended counterclaim dismissed**.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report and Recommendations to all parties.

**ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b), and W.D.N.Y. Local Civil Rule 72.3(a).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIC TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT DISTRICT COURT'S ORDER ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.**  Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on <u>de novo</u> review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance.  See <u>Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co.</u>, 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  **Failure to comply with the provision of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

So Ordered.

                                                                                    /s/ Hugh B. Scott
                                                                                      Honorable Hugh B. Scott
                                                                                      United States Magistrate Judge

Dated: Buffalo, New York
       October 24, 2008